# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

NORTHFIELD INSURANCE
COMPANY, individually and as
assignee and subrogee of First Coast
Association Management, LLC

    Plaintiff,

v.                                                             Case No. 3:19-cv-625-J-32MCR

ROCKHILL INSURANCE
COMPANY,

    Defendant.

## **O R D E R**

This insurance bad faith case is before the Court on Defendant Rockhill Insurance Company's Motion to Dismiss. (Doc. 10). Plaintiff Northfield Insurance Company responded, (Doc. 17), and Rockhill replied. (Doc. 24).

## I. BACKGROUND

This case involves claims of common law and statutory bad faith in failing to settle an underlying lawsuit against First Coast Association Management, LLC. During the relevant period, both Rockhill and Northfield had policies that provided coverage to First Coast. In a prior coverage action, this Court determined that Northfield's policy was excess and Rockhill's policy was

primary. Rockhill Ins. Co. v. Northfield Ins. Co., 297 F. Supp. 3d 1279, 1287–88 (M.D. Fla. 2017). Northfield now brings this bad faith lawsuit to recover $890,000 it expended in settling the underlying lawsuit, claiming that it would not have needed to spend that amount had Rockhill acted in good faith. (Doc. 1).

The Complaint alleges three claims: common law bad faith via equitable subrogation (Count I); common law bad faith via assignment (Count II); and statutory bad faith (Count III). Rockhill moves to dismiss each count.

## II. DISCUSSION

### A. Count I – Common Law Bad Faith via Equitable Subrogation

Rockhill asserts that Count I should be dismissed because Northfield fails to allege that Rockhill owed a duty to Northfield or First Coast, and that Count I is comprised of only conclusory allegations. (Doc. 10 at 6–8). Northfield argues that it has properly alleged an equitable subrogation bad faith claim. (Doc. 17 at 3–6).

Insurers in Florida are obligated to act in good faith toward their insureds in handling claims. Boston Old Colony Ins. Co. v. Gutierrez, 386 So. 2d 783, 785 (Fla. 1980). To act in good faith, an insurer is required "to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." Id. "[T]he issue is whether, under all of the circumstances, the insurer could and should have settled the claim within

2

the policy limits had it acted fairly and honestly toward its insured and with due regard for his interests." Berges v. Infinity Ins. Co., 896 So. 2d 665, 679 (Fla. 2004). "Under the doctrine of equitable subrogation, an excess insurer has the right to 'maintain a cause of action . . . for damages resulting from the primary carrier's bad faith refusal to settle the claim against their common insured.'" Perera v. U.S. Fid. & Guar. Co., 35 So. 3d 893, 900 (Fla. 2010) (citing U.S. Fire Ins. Co. v. Morrison Assurance Co., 600 So. 2d 1147, 1151 (Fla. 1st DCA 1992)). Thus, in an equitable subrogation claim, the insurer owes the duty of good faith to its insured, but it is the excess insurer who suffers damages.

Northfield alleges that "Rockhill acknowledged First Coast as an insured under the Rockhill policy," (Doc. 1 ¶ 18), that Northfield's policy with First Coast was excess to Rockhill's policy, id. ¶¶ 12–13, and that Northfield is equitably subrogated to the rights of First Coast, id. ¶ 46. Further, Northfield alleges that Rockhill was presented with several opportunities before and after the underlying suit was filed to settle within its policy limits. Id. ¶¶ 19–23, 28. Thus, Northfield alleges that due to Rockhill's failure to settle, it was required to pay $890,000 as the excess insurer to settle the claims against First Coast. Id. ¶ 32. According to the Complaint, Rockhill could have settled the claim within the primary policy limits had it acted in good faith, id. ¶¶ 15–23, 41–45, and Rockhill acted in bad faith in failing to settle the claims against First Coast, resulting in harm to First Coast's excess insurer Northfield. These allegations

3

sufficiently state an equitable subrogation bad faith claim. See Perera, 35 So. 2d at 900.

**B. Count II – Common Law Bad Faith via Assignment**

Rockhill claims that there can be no common law bad faith claim absent an excess judgment, and here, the aggregated policy limits among First Coast's several insurers (including Northfield) was not exhausted. (Doc. 10 at 8-11). As First Coast's assignee, Northfield has only the rights and causes of actions that First Coast would have as the insured. As stated by the Florida Supreme Court, an insured must have an excess judgment, a Cunningham agreement, or a Coblentz agreement to bring a bad faith claim. Perera, 35 So. 3d at 899–02. This case does not involve a Cunningham or Coblentz agreement, thus, First Coast must have suffered an excess judgment. "[A]n excess judgment is defined as the difference between <u>all available insurance coverage</u> and the amount of the verdict recovered by the injured party." Id. at 902 (emphasis added) (quotation marks omitted) (quoting United Servs. Auto. Ass'n v. Jennings, 731 So. 2d 1258, 1259 (Fla. 1999)). As an excess insurer, Northfield can bring a claim for equitable subrogation (which it has alleged in Count I); but as an assignee of First Coast it cannot bring a bad faith claim because it is undisputed that First Coast did not suffer a judgment exceeding all available insurance. See id. Thus, Count II is due to be dismissed.

4

### C. Count III – Statutory Bad Faith

Rockhill argues that Count III should be dismissed because the Civil Remedy Notice ("CRN")—a prerequisite to filing a statutory bad faith claim—is invalid as a matter of law. (Doc. 10 at 12–17). Florida Statute § 624.155 authorizes "[a]ny person [to] bring a civil action against an insurer when such person is damaged" because the insurer did "[n]ot attempt[] in good faith to settle claims when, under all of the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests." § 624.155(1)(b)(1). Before bringing a statutory bad faith action, the person asserting the claim must provide the insurer sixty days written notice of the violation utilizing a CRN filed with the Department of Financial Services. § 624.155(3). The sixty-day period is known as the cure period because "[n]o action shall lie if, within [sixty] days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected." § 624.155(3)(c). If the insurer does not cure the violation and receives an "adverse adjudication[,]" the "insurer shall be liable for damages, together with court costs and reasonable attorney's fees incurred by the plaintiff." § 624.155(4). "The damages recoverable pursuant to this section shall include those damages which are a reasonably foreseeable result of a specified violation

5

of this section by the authorized insurer and may include an award or judgment in an amount that exceeds the policy limits." § 624.155(8).[1]

Rockhill contends that Northfield's CRN, which was filed after the settlement in the underlying action, is invalid as a matter of law because Rockhill had already tendered its full policy limits in payment of the settlement. (Doc. 10 at 15–17). Thus, Rockhill asserts, it could not cure any alleged deficiencies absent paying extra-contractual damages, which are not required to cure a violation. (Doc. 10 at 17 (citing Talat Enters., Inc. v. Aetna Cas. & Sur. Co., 753 So. 2d 1278, 1282 (Fla. 2000))). However, Rockhill's interpretation of the CRN cure requirements is incorrect.

"[T]he essence of a third-party bad faith cause of action is to remedy a situation in which an insured is exposed to an excess judgment because of the insurer's failure to properly or promptly defend the claim." Macola v. Gov't Emps. Ins. Co., 953 So. 2d 451, 458 (Fla. 2006) (quotation marks omitted)

---

[1] Rockhill argues that Count III fails "[a]s a threshold matter" because Northfield "failed to attach the CRN to the Complaint, quote the material portions of the CRN, or plead the CRN according to its legal effect." (Doc. 10 at 12). Assuming, arguendo, that this is the requirement, Northfield alleged that it filed a CRN and that Rockhill refused to reimburse Northfield. (Doc. 1 ¶¶ 37–40). Thus, Northfield has pled the existence and legal effect of the CRN—that it was filed and the that Rockhill refused to "cure." § 624.155(3). Moreover, Rockhill attached the CRN to its motion to dismiss, so it is a part of the record. A district court may consider documents attached to a motion to dismiss if they are central to the complaint and no party questions their authenticity. Basson v. Mortg. Elec. Registration Sys., Inc., 741 F. App'x 770, 771 (11th Cir. 2018).

6

(quoting Cunningham v. Standard Guar. Ins. Co., 630 So. 2d 179, 181 (Fla. 1994)). If an insurer could preclude a statutory bad faith claim by paying the policy limits at any time regardless of its conduct during settlement, then the statute would be ineffectual in third-party cases. Under Rockhill's interpretation, an insurer could act in bad faith in settling a claim to try for a lower payout, then, if it fails, pay the policy limits and leave the insured exposed to an excess judgment without any statutory recourse against the insurer. Such a result is not allowed under the common law, and "the statute codifies the common law with respect to third-party bad faith." Id. at 457. Thus, a CRN must be allowed to seek extra-contractual damages in third-party cases. Eads v. Allstate Indem. Co., No. 14-CIV-61791, 2014 WL 6453178, at *6 (S.D. Fla. Nov. 17, 2014) ("[The insurer's] argument that cure would obligate payment in excess of the policy limits and was therefore not legally required is without merit."); see also Talat, 753 So. 2d at 1282 ("To cure an alleged violation and to avoid a civil action, an insurer must pay the claim (sometimes in excess of policy limits in the third-party context) before the sixty days expire." (emphasis added)). Rockhill did not cure. Northfield's CRN is valid and Count III remains.

## III. CONCLUSION

Accordingly, it is hereby

**ORDERED:**

1. Defendant Rockhill Insurance Company's Motion to Dismiss (Doc. 10) is **GRANTED in part and DENIED in part**.

2. Count II of the Complaint is **DISMISSED with prejudice**. The remainder of Rockhill's Motion to Dismiss is **DENIED**.

3. Not later than **December 20, 2019**, Rockhill shall answer the complaint.

4. The Case Management and Scheduling Order, (Doc. 23), continues to govern this case.

**DONE AND ORDERED** in Jacksonville, Florida this 26th day of November, 2019.

*/s/ Timothy J. Corrigan*
TIMOTHY J. CORRIGAN
United States District Judge

jb
Copies to:

Counsel of record